UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GEORGE G. BOCOBO, M.D., | : | HONORABLE JOSEPH E. IRENAS |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 02-1697 (JEI) |
| | : | |
| v. | : | |
| | : | |
| RADIOLOGY CONSULTANTS OF | : | **OPINION** |
| SOUTH JERSEY, P.A.; SOUTH | : | |
| JERSEY HEALTH SYSTEM, INC.; | : | |
| PAUL CHASE, D.O.; and | : | |
| ALLIANCE RADIOLOGY | : | |
| ASSOCIATES, L.L.C., | : | |
| | : | |
| Defendants. | : | |

**Appearances:**

OBERMAYER REBMANN MAXWELL & HIPPEL LLP
By: Gregory D. Saputelli, Esq.
Kimberly D. Sutton, Esq.
20 Brace Road, Suite 300
Cherry Hill, NJ 08034
    Counsel for Plaintiff

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
By: Alan C. Milstein, Esq.
Matthew Podolnick, Esq.
Michael Dube, Esq.
4300 Haddonfield Road, Suite 311
Pennsauken, NJ 08109
    Counsel for Defendants Radiology Consultants of South
    Jersey, P.A., Alliance Radiology Associates, L.L.C., and
    Paul Chase, D.O.

JACKSON LEWIS LLP
By: Bret M. Anders, Esq.
Timothy D. Speedy, Esq.
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, New Jersey 07960-6844
    Counsel for Defendant South Jersey Health System, Inc.

GIORDANO, HALLERAN & CIESLA
By: Frank R. Ciesla, Jr., Esq.
125 Half Mile Road, Box 190
Middletown, New Jersey 07748
       Counsel for Defendant South Jersey Health System, Inc.


**IRENAS**, Senior District Judge:

On April 12, 2002, George G. Bocobo, M.D. ("Bocobo" or "Plaintiff") filed suit against Defendants Radiology Consultants of South Jersey, P.A. ("Radiology Consultants"); South Jersey Health System, Inc. ("SJHS"); Paul Chase, D.O. ("Chase"); and Alliance Radiology Associates, L.L.C. ("Alliance Radiology")(collectively "Defendants").  The original 50-page complaint asserted twelve counts covering various tort claims (Counts 3, 4, 8, 9, 10, and 11), shareholder claims (Counts 5 and 7), contract claims (Counts 6 and 12) and anti-trust violations (Counts 1 and 2) arising out of Bocobo's termination from Radiology Consultants and the formation of a new radiology group, Alliance Radiology,[1] without him.

Defendants' various motions for summary judgment pursuant to Fed. R. Civ. P. 56 are presently before the Court:[2]  Radiology

---

[1] The original complaint identified the new radiology group as "Radiology Affiliates."  Bocobo amended his complaint on December 20, 2002, to replace "Radiology Affiliates" with "Alliance Radiology Associates, L.L.C."  All references to the "Complaint" are meant to include this non-substantive amendment to the original complaint.

[2] Defendants' previous motion for partial summary judgment on the anti-trust claims (Counts One and Two) was granted on February 25, 2004.  *See Bocobo v. Radiology Consultants of South Jersey, P.A., et al.*, 305 F. Supp. 2d 422 (D.N.J. 2004). Additionally, on November 24, 2004 the Court granted

Consultants, Alliance Radiology, and Chase (the "RC Defendants")
move for partial summary judgment on Counts 3, 5, 6, 7, 8, 10,
and 11;[3]  SJHS moves, in two separate motions, for summary
judgment on Counts 4, 5, 6, 7, 8, 10, 11 and 12, all the counts
in which it is named (or treated by the Court) as a defendant.[4]

This Court has subject matter jurisdiction pursuant to 28
U.S.C. § 1332, as Plaintiff is a citizen of Pennsylvania and all
Defendants are citizens of New Jersey.  For the reasons set forth
below, the Court will grant in part and deny in part the summary
judgment motion of the RC Defendants and will grant both of
SJHS's motions for summary judgment.[5]

## I.

Bocobo's relationship with SJHS began in January, 1985, when
he was granted staff privileges to practice radiology at
Bridgeton and Millville Hospitals, both of which were owned by

---

summary judgment for Defendant SJHS on Counts Thirteen, Fourteen, and Fifteen,
which were added by the first substantive amendment to the Complaint.

[3] The RC Defendants did not move for summary judgment on Count XII in
which plaintiff made claims pursuant to a deferred compensation agreement.

[4] After this Court granted leave, Plaintiff amended the Fifth Count on
January 12, 2005, to add SJHS as a defendant on a civil conspiracy and an
aiding and abetting theory. SJHS's second summary judgment motion relates
solely to this count.

[5] In a separate motion SJHS has also moved to strike the expert reports
of Dr. Shershow and Dr. D'Arrigo. At oral argument on the motions, plaintiff
withdrew Dr. D'Arrigo as a proposed expert.  In light of the Court's
disposition of SJHS's motions for summary judgment, the Court will dismiss the
motion to strike the report of Dr. Shershow as moot.

SJHS and located in Cumberland County, New Jersey.   Bocobo
admits that right from the start, he began "complaining" about
what he perceived to be problems with hospital policies and
practices.   (Bocobo 8-5-03 Dep. at 79:8-16.)   Over the 16 years
Bocobo had staff privileges with SJHS, he earned a reputation
among several doctors and other hospital personnel as being
difficult to work with.[6]

In 1993, SJHS advised its staff radiologists that in order
to continue practicing at Bridgeton and Millville they would need
to form a practice group which would then enter an exclusive
contract with SJHS to perform radiological services at the two
hospitals.[7]   Plaintiff, Chase and two other radiologists then
formed Radiology Consultants, and on August 27, 1993, SJHS
awarded it an exclusive contract to provide radiology services at
the Bridgeton and Millville hospitals.   The contract provided,
*inter alia*, that only radiologists employed by the group could

---

[6] *See* Zeccardi Dep. at 78, 84; Phillips Dep. at 78 (describing Bocobo as
generally "difficult to deal with," "perseverative, argumentative and
unreasonable").

[7] Both the New Jersey Supreme Court and the United States Supreme Court
have affirmed the validity of such exclusive contracts.   In *Belmar v. Cipolla*,
the New Jersey Supreme Court held, "many hospitals contract with third parties
for the provision of certain services, such as emergency room treatment,
radiology, and anesthesiology. . . . [T]he [hospital's] decision to enter an
exclusive contract was a reasonable choice, and the contract does not violate
public policy."   96 N.J. 199, 208, 211 (1984) (citing decisions from six other
jurisdictions upholding such exclusive contracts).   *See also Jefferson Parish
Hosp. v. Hyde*, 466 U.S. 2, 32 (1984) (upholding the validity of an exclusive
contract between a hospital and an anesthesiology group against an antitrust
attack).

receive staff privileges at SJHS and that radiologists would be
precluded from practicing radiology at SJHS for two years if
their employment terminated.   All four radiologists were
shareholders, officers, and employees of the company.[8]   Pursuant
to a Business Relationship Agreement between the individual
doctors, Chase held 52% of the voting stock, was designated as
both President of the group and Chief of the Radiology Department
at both hospitals, and had the final say in any decisions about
the administration and operation of the group (although pursuant
to the Shareholders Agreement he was to "solicit the input" of
the other radiologists "with regard to the day-to-day and long
range planning of the Company").   A majority vote of the
shareholders (3 out of 4) was required in order to make a number
of major decisions for the corporation, including hiring (but not
termination) and compensation decisions, borrowing large sums of
money, and the purchase of equipment.

Shortly after incorporation, Radiology Consultants purchased
an outpatient radiology center from Cumberland Radiology Center,
and named it the Imaging Center. The original purchase of this
equipment had been financed by SJHS, so when Radiology
Consultants purchased the Imaging Center, it became responsible
for the debt to SJHS.   While employed by Radiology Consultants

---

[8] Each radiologist had an Employment Contract with Radiology
Consultants. The radiologists also had a Shareholder Agreement and a Business
Relationship Agreement among themselves.

Bocobo also worked at the Imaging Center.

In 2000, Bocobo complained of improper or unlawful policies and practices of Radiology Consultants that he believed violated state laws, or reflected an improper quality of patient care.[9] Bocobo reported these alleged violations to Chase and also to the Chief of Medical Staff at SJHS.   The relationship between Bocobo and Chase and between Bocobo and other hospital employees or staff members also deteriorated during this time for reasons that were not related to Bocobo's complaints regarding Radiology Consultants' policies and patient care.[10]

In early 2001 SJHS decided to renew neither Radiology Consultants' exclusive contract nor its exclusive contract with the radiology group providing services at its Vineland hospital. It encouraged both groups to form a new radiology group which would provide services to all three hospitals.

On March 5, 2001, doctors from both groups met and agreed to form a new radiology group, Alliance Radiology, to be the single

---

[9] These alleged violations of state law are too extensive to detail here, but are recounted at length in the Complaint, covering several pages, replete with citations to applicable law, mostly grounded in Administrative Code governing Standards for Licensing of Ambulatory Care Facilities (N.J. Admin. Code § 8:43A) and Hospital Licensing Standards (N.J. Admin. Code § 8:43G). (Complaint at ¶¶ 46-49.). There is nothing in the record which suggests that during his fifteen years working at SJHS hospitals Bocobo ever complained to an appropriate government official, or tied his complaints to specific regulations. The listing in the Complaint appears to be the result of a post hoc analysis by counsel.

[10] For example, the parties do not dispute that the relationship between Chase and Bocobo became increasingly adversarial after a confrontation they had over Bocobo's failure to come into the hospital during a snowstorm in February 2001.

provider SJHS desired.  Bocobo was the only doctor from Radiology
Consultants invited neither to the meeting nor to join the new
group.  It is undisputed that Alliance Radiology was formed
without Bocobo at least partially because Chase and others
disliked Bocobo.

Bocobo was formally notified on April 12, 2001, that his
employment with Radiology Consultants would be terminated in 90
days, effective July 13, 2001, SJHS awarded an exclusive contract
to Alliance Radiology on August 12, 2001.  Because Radiology
Consultants no longer had a contract with SJHS and because Bocobo
was not part of the new group, he could not serve as a
radiologist on staff at any of SJHS's facilities.[11]

On August 1, 2001, approximately two weeks after his
termination became effective, Bocobo joined the staff of the
University of Pennsylvania Health System.  His new radiology
position was alleged to be at a reduced salary and to offer fewer
benefits.

## II.

"[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,

---

[11] The Court has been advised by counsel to SJHS that the three acute
care hospitals in Bridgeton, Millville and Vineland have been consolidated
into a new hospital just opened in Vineland. Alliance Radiology does not have
the exclusive contract to provide radiology services to the new facility, and
Chase now practices in Philadelphia.

together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'" *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.
56(c)). In deciding a motion for summary judgment, the Court
must construe the facts and inferences in a light most favorable
to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*,
794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not
"to weigh the evidence and determine the truth of the matter, but
to determine whether there is a genuine issue for trial."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In deciding summary judgment motions, "unsubstantiated
arguments made in briefs or at oral argument are not evidence to
be considered." *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1370
(3d Cir. 1993). "Vague" and "amorphous references" in the record
"are insufficient to create a genuine issue of material fact on
summary judgment." *Id.* at 1370 n.8. *See also Jersey Cent. Power
& Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir.
1985)("[L]egal conclusions unsupported by documentation of
specific facts, are insufficient to create issues of material
fact that would preclude summary judgment.").

### III.

### A.

In Count Three Bocobo claims Radiology Consultants violated New Jersey's "whistle-blower" statute, the Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1 through -8, by terminating him in retaliation for raising quality of patient care issues.[12]

A CEPA claim requires: (1) reasonable belief that the employer's conduct violated either a law, rule, or regulation; (2) whistle-blowing activity; (3) adverse employment action; and (4) a causal connection between the whistle-blowing and adverse employment action.[13] *Dzwonar v. McDevitt*, 177 N.J. 451 (2003);

---

[12] Bocobo's failure to assert this claim against SJHS is worth noting. Bocobo allegedly believed that regulations applying to various health care *facilities* were being violated. *See, e.g.,* N.J. Admin. Code § 8:43G-1.2 ("'Hospital' means an institution . . . which maintains and operates facilities for the diagnosis, treatment or care of two or more non-related individuals"); N.J. Admin. Code § 8:43A-1.3 ("'Ambulatory care facility' means a surgical facility in which surgical cases are performed"); N.J. Admin. Code § 13:35-2.6 ("'Diagnostic office' means a practice location whether stationary or mobile . . . which provides equipment and staff necessary for the offering or performance of diagnostic tests"). Although Radiology Consultants itself may be a "diagnostic office," nothing in its Complaint suggests that Bocobo had problems with the operation of that facility. Rather, these regulations apparently apply to SJHS which did not employ Bocobo. However, for purposes of summary judgment, the Court will assume *arguendo* that Bocobo could reasonably believe that the regulations applicable to SJHS were also applicable to Radiology Consultants whose physicians were the exclusive providers of radiology services at the SJHS hospitals in Millville and Bridgeton.

[13] The statute of limitations for CEPA claims is one year. N.J. Stat. Ann. § 34:19-5. A CEPA cause of action accrues on the date of actual discharge. *Alderiso v. Med. Ctr. of Ocean County*, 167 N.J. 191, 194 (2001). "For computation purposes, the first day to be included in the one-year limitations period is the day after the date of discharge." *Id.* at 194-95. In a letter dated April 12, 2001, Plaintiff was notified that "at the end of ninety days you will no longer be employed by [Radiology Consultants]. Until that time, you will continue to receive your full compensation." Thus, the

9

*Caver v. The City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005) (quoting *Dzwonar*).  The Court concludes that Bocobo has not raised any triable issue of fact on causation.[14]

"A CEPA plaintiff can prove causation by presenting either direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation." *Zaffuto v. Wal-Mart Stores, Inc.*, 130 Fed. Appx. 566, 569 (3d Cir. 2005).  "A plaintiff's circumstantial evidence of retaliation may include evidence that 'demonstrates such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-retaliatory reasons.'" *Id.*  (quoting *Kolb v. Burns*, 320 N.J. Super. 467, 478 (App. Div. 1999)).  Circumstantial evidence including, but not limited to, (a) temporal proximity

---

first day counted in the limitations period is the 91st day after April 12, 2001, or July 13, 2001.  Plaintiff filed his Complaint on April 12, 2002; less than one year after July 13, 2001.  Thus, contrary to Radiology Consultants' argument, Bocobo's CEPA claim is timely.

[14] The Court also questions whether Bocobo's complaints are actually statutorily protected conduct.  Bocobo's complaints must have been made to a supervisor in order to be covered by CEPA.  N.J. Stat. Ann. 34:19-3.  The record is not clear about the relationship between Bocobo and Chase.  The Business Relationship Agreement which created Radiology Consultants indicates that Bocobo and Chase were co-executives and co-shareholders.  However, Chase was also Chief of the Radiology Department at Bridgeton and Millville hospitals and the record does suggest Chase had some administrative authority.  Whether Chase had direct authority over Bocobo is an issue of fact that cannot be resolved at this time.  However, because there is no issue of material fact regarding causation, the Court will assume that Chase was a "supervisor" within the meaning of N.J. Stat. Ann. § 34:19-3, but nonetheless dismiss Bocobo's CEPA claim.

between the whistle-blowing and retaliatory conduct and (b) antagonism during the intervening period may give rise to an inference of causation. *Campbell v. Abercrombie & Fitch, Co.*, No. 03-3159, 2005 U.S. Dist. LEXIS 11507 at *23-25 (D.N.J. June 9, 2005).

A prima facie showing of causation is established where the plaintiff produces evidence that

> it is 'more likely than not' that his statutorily protected conduct . . . was a 'determinative or substantial motivating factor in [the defendant's] decision to terminate his employment.' . . . That is, he must present proof capable of convincing a rational fact finder that his actions in reporting [a violation] 'made a difference' in the decision to discontinue his employment.

*Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 609 (D.N.J. 2003). "At all times the burden of proof or risk of non-persuasion, including the burden of proving 'but for' causation or causation in fact, remains on the employee." *Fleming v. Corr. Healthcare Solutions, Inc.*, 164 N.J. 90, 100 (2000).

Bocobo has not raised any issue of material fact that could lead a reasonable fact finder to conclude that his complaints over 15 years of alleged regulatory non-compliance somehow led to his termination by Radiology Consultants. Nothing in the record supports a conclusion that Chase viewed the complaints in 2000 (which Bocobo asserts caused his termination) any differently than the disagreements Bocobo had voiced continuously before

11

2000.  Bocobo never actually complained to any government or
regulatory official, nor is there any reason found in the record
which would indicate that Chase (or anyone else) thought he might
do so in 2000.

Bocobo provides no evidence explaining why, after 15 years,
Chase was finally motivated by those particular complaints to
terminate him.  No affidavit, deposition or other evidence
supports the conclusion that either Chase or SJHS viewed his
complaints in 2000 any differently than they had in the past, or
that there had ever been the slightest concern that these
complaints would cause regulatory or legal problems for anybody.
Even assuming that Bocobo's most recent complaints came about one
year prior to his termination, such proximity alone is
insufficient, especially when the evidence as a whole supports
only a contrary inference.  *See Campbell,* 2005 U.S. Dist. LEXIS
at *27.

The record supports Defendants' assertion that Bocobo's
complaints were just one particular manifestation of his
difficult personality. (Zeccardi Dep. at 78 and 84; Phillips Dep.
at 78).  CEPA was not enacted to "assuage egos or settle internal
disputes at the workplace." *Klein v. Univ. of Med. and Dentistry
of N.J.,* 377 N.J. Super. 28, 45 (App. Div. 2005); *see also Maw v.
Advanced Clinical Commc'ns, Inc.,* 179 N.J. 439, 445 (2004) (under
CEPA "the dispute between employer and employee must be more than

a private disagreement."). Without evidence to infer a causal connection between the whistle-blowing activity and termination, the Court is left only with evidence of a long deterioration of strained working relationships between Bocobo and Chase. Thus, summary judgment will be granted on the CEPA claim.

### B.

Count Four apparently arises out of SJHS's failure to hold a hearing before Bocobo lost his medical staff privileges.[15] Bocobo claims that SJHS violated his right to a fair hearing in violation of public policy as contemplated by *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 107 N.J. 240 (1987).[16]

In *Nanavati*, Burdette Tomlin Memorial Hospital revoked Dr. Nanavati's staff privileges after conducting an ad hoc investigation into Dr. Nanavati's alleged disruptive behavior in violation of a hospital bylaw. *Id.* at 244-45. The New Jersey Supreme Court, affirming the lower courts' judgments, held that

---

[15] Count Four, like most (if not all) of the Complaint is far from a "short and plain statement of the claim showing the plaintiff is entitled to relief." Fed. R. Civ. P. 8(a)(2). Count Four contains various allegations that Alliance Radiology is the alter ego of Radiology Consultants and that Chase conspired with SJHS to "circumvent the provisions of the Exclusive Contract and the Employment Agreement and the Business Relationship Agreements." (Complaint at ¶ 111). The Court fails to see how these allegations are relevant to Bocobo's claim that SJHS terminated his staff privileges in violation of public policy.

[16] On January 19, 2004, this Court partially granted SJHS's motion for summary judgment on Count Four, dismissing Bocobo's claim, based on *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980), that he was wrongfully discharged. The Court now considers the remaining *Nanavati* claim.

13

the hospital had deprived Dr. Nanavati of a fair hearing and remanded the matter to the hospital to conduct a fair hearing.

The present case is distinguishable from *Nanavati*. In *Nanavati* the hospital directly employed the plaintiff.  Here, Bocobo was employed by Radiology Consultants, a separately incorporated group, which had an exclusive contract with SJHS. By virtue of the Exclusive Contract, Bocobo's medical staff privileges were derivative of his employment with Radiology Consultants.  He had no independent right to remain on staff at SJHS.  Therefore, SJHS was not obligated to conduct a hearing before deciding not to renew Radiology Consultants' exclusive contract.

Moreover, the New Jersey Appellate Division has held, under very similar facts, that such an exclusive arrangement "constituted a reasonable management decision" by a hospital. *Bloom v. Clara Maass Med. Ctr.*, 295 N.J. Super. 594, 609 (App. Div. 1996).  In *Bloom,* the plaintiff-radiologists were members of a radiology group that had an exclusive contract with Clara Maass Medical Center.  *Id.* at 599.  The hospital's "closed staff policy" required radiologists to sign employment agreements with the hospital's chosen chairman of radiology in order to have staff privileges.  *Id.* at 598.  Because the radiologists refused to sign employment agreements with the radiology chair, the hospital, pursuant to their closed staff policy, refused them

14

staff privileges.  *Id.* at 604-05.  Affirming the trial court's
grant of summary judgment against the radiologists, and relying
on *Nanavanti* and its progeny, the Appellate Division reasoned:
"Clara Maass' decision to award an exclusive contract for
radiological services, which led to the revocation of plaintiffs'
staff privileges, constituted a reasonable management decision."
*Id.* at 609.  The relevant facts of this case are
indistinguishable.  SJHS is entitled to summary judgment on Count
Four.

C.

In Counts Five, Six and Seven Bocobo asserts that the RC
Defendants breached their contractual duties to Bocobo as a
shareholder of Radiology Consultants and pursuant to the Business
Relationship Agreement, the Shareholder Agreement, and the
Employment Contract entered in 1993 in connection with the
creation of Radiology Consultants.  As part of this mix Bocobo
also alleges a breach of fiduciary duty as well as a breach of
the implied covenant of good faith.

Finally, he asserts "minority shareholder claims" against
unspecified defendants under the New Jersey Business Corporation
Act, N.J.S.A. 14A:1 et seq.  This Act generally governs the
relationship between shareholders, directors and officers, and
their corporation.  1-4 John R. MacKay III, N.J. Corporations and

15

Other Business Entities § 4.03 (1997) ("The relationship between
shareholders, directors, and officers is established by the New
Jersey Business Corporation Act"). *See also* N.J.S.A. 14A:12-7(c)
which deals with situations in which "those in control have acted
fraudulently or illegally . . .or have acted oppressively or
unfairly toward one or more minority shareholders . . . ."[17]

In an Amendment to the Fifth Count SJHS was specifically
added as a defendant on the theory that it aided and abetted or
conspired with the RC Defendants to breach their fiduciary duty
as alleged in the original count.  Although SJHS is not mentioned
as a defendant in Count Six, and its relationship to Count Seven
is unclear, because the causes of action in all Counts Five, Six
and Seven are factually interrelated, this Court will treat SJHS
as a defendant to all three counts.

In his business and professional relationship with the
defendants, Bocobo's rights arise from his status as an employee
of Radiology Consultants, as one of its four shareholders, and as
a member of the staff of the hospitals at Bridgeton and

---

[17] It is unclear whether SJHS is an intended defendant to this claim
which appears in the Seventh Count. The alleged facts supporting the claim
only make reference to actions taken by Chase, Radiology Consultants, and
Alliance Radiology. Indeed, SJHS is not even mentioned by name anywhere in
Count Seven.  Given that Count Seven demands judgment against "Defendants,"
however, the Court will assume SJHS is a defendant to Count Seven.

Radiology Consultants appears to have been created as a Professional
Service Corporation pursuant to the provisions of N.J.S.A. 14A:17-1 et seq.
Generally, the provisions of the Business Corporation Act apply to
professional service corporations unless there is a conflict between the two
laws.  N.J.S.A. 14A:17-15. No party has raised this issue.

Millville.  We will consider each set of rights in turn.

The Business Relationship Agreement contemplates that each of the four shareholders would enter an Employment Contract as Bocobo in fact did on July 20, 1993.  That Contract provides in ¶2 that either the corporation or the employee can terminate employment upon 90 days written notice.  There is no requirement that termination by Radiology Consultants be based on "cause".[18]

The Business Relationship Agreement provides in ¶ 7 that "The administration and operations of the Corporation shall be the responsibility of Chase."  There are exceptions for certain important decisions which require either the vote of two shareholders (if Chase is one of them) or three votes (not including Chase). Interestingly, terminating the employment of one of the four shareholders is not one of the listed important decisions, but in any case there is no suggestion that any of the other shareholders opposed Bocobo's termination. Thus, to the extent that Boboco claims rights as an employee of Radiology Consultants the summary judgment motion of all defendants will be

---

[18] Given the ease with which Bocobo found new employment, this clause does not seem as harsh as it might otherwise be.  In Paragraph 136 of the Complaint Plaintiff alleges that "Under he terms of the Shareholder Agreement, the employment of a shareholder/physician could only be terminated for cause, based on a vote of a majority of the shareholders." An examination of that agreement did not reveal any such provision.  This is yet another example of a prolix, confusing, and muddled Complaint which has made sorting out the issues a difficult task.

granted.[19]

Bocobo's right as a shareholder in Radiology Consultants is governed by New Jersey corporate law, the Business Relationship Agreement, and the Shareholder Agreement. Nothing in any of these agreements suggests that termination of Bocobo's employment strips him of his rights as a shareholder. Indeed, the Shareholders Agreement of July 20, 1993, provides in ¶ 1(b) for sale of his stock in the event of his termination of employment.[20]  To the extent that Boboco's claims are based on his status as a shareholder of Radiology Consultants, the summary judgment motion of the RC Defendants will be denied.[21]

Bocobo's Employment Contract (last unnumbered paragraph of ¶ 2) and the contract dated August 27, 1993 between SJHS and Radiology Consultants (¶ 3.3) make unmistakably clear that his status as a staff member of an SJHS hospital was completely dependent on his employment by Radiology Consultants.  Where

---

[19] To the extent that Plaintiff seeks damages for interference with future economic advantage, that claim will be discussed below with respect to Count X.

[20] The Shareholders Agreement was subsequently amended on May 5, 1996, but the amendments did not alter the cited provision.

[21] The plaintiff clothes his claims in the rubric of "breach of fiduciary duty." While there is no doubt that shareholders in a small closed corporation owe fiduciary duties to each other, and that Chase as President and holder of the majority voting rights in Radiology Consultants owed a fiduciary duty to the other shareholders (See, e.g. Muellenberg v. Bikon Corp., 143 N.J. 168, 177 (1995); Nuisance Corp. v. Cattafi, 17 B.R. 80, 82 (Bankr. N.J.D. 1981)), this fact adds little to this case where termination of employment without cause is specifically provided for by agreement, and shareholder rights are likewise resolvable by reference to the Shareholders Agreement and New Jersey law.

termination of staff privileges results from termination of his employment, Bocobo clearly waived his rights to a "fair" hearing that might otherwise be legally required by cases such as *Belmar v. Cipolla*, 96 N.J. 199, 207-08 (1984). No one in this case has asserted that Boboco was unqualified on the merits to be a staff physician at a SJHS facility. Therefore, summary judgment will be granted to the RC Defendants to the extent that there is any claim in Counts Five, Six or Seven based on Plaintiff's loss of staff privileges in Bridgeton or Millville.

The Fifth Count (as amended) alleges that SJHS aided and abetted and/or conspired with the other defendants to cause the breaches of fiduciary duty Bocobo alleges in the original Count 5.[22] Bocobo has not demonstrated any material issue of fact with regard to SJHS's involvement in Bocobo's termination from Radiology Consultants and exclusion from Alliance Radiology. Therefore summary judgment will be granted as to SJHS.

To establish a claim for civil conspiracy, Bocobo must prove: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) an unlawful purpose or a lawful purpose achieved by unlawful means; and (4)

---

[22] To the extent that the claim against SJHS is dependent on the tort claims in Counts Ten (tortious interference) and Eleven (conversion), Amended Count Five must be dismissed because the Court will also dismiss these claims. *See Eli Lilly & Co. v. Roussel Corp.*, 23 F.Supp. 2d 460, 497 (D.N.J. 1998)(dismissing civil conspiracy claim where Court also dismissed tort claims forming basis of conspiracy claim).

19

special damages.[23]  *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir. 2003); *Perry v. Hon. Daniel Bernardin*, No. 04-6102, 2005 U.S. Dist. LEXIS 18115 at *19-20 (D.N.J. August 18, 2005).  The "principal element" of a civil conspiracy claim is "'an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage.'"  *Perry*, 2005 U.S. Dist. LEXIS 18115 at *19.

To establish a claim for aiding and abetting, Bocobo must prove: (1) a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing.  *Morganroth*, 331 F.3d at 415.

It is undisputed that SJHS dictated many of the terms under which Radiology Consultants, and then Alliance Radiology, would be granted an exclusive contract and, by virtue of that exclusive relationship, had influence over the operations of the group. However, contrary to Bocobo's arguments, these facts do not support an inference that SJHS was "fully involved in the decision to terminate Dr. Bocobo from its medical staff." (Plaintiff's Brief in Opposition to SJHS's Motion for Summary Judgment on Amended Count Five at p. 12).

Bocobo has presented no evidence that suggests that SJHS

---

[23]  Plaintiff did not particularly plead special damages.  However, the Court will dismiss the civil conspiracy claim on other grounds.

either requested, encouraged, or directed Plaintiff's termination
from Radiology Consultants or his exclusion from Alliance
Radiology.[24]  To the extent that SJHS might be considered a
defendant in Counts Six and Seven, the same rationale applies.
Accordingly, summary judgment as to SJHS will be granted on
Counts Five, Six and Seven.


D.

In Count Eight, Bocobo asserts that the Defendants either
defamed him or committed trade libel against him.[25]  Summary
judgment for all Defendants will be granted because a defamation
action is time-barred.[26]  Additionally, Bocobo has not
sufficiently plead special damages to support a trade libel
claim.[27]  Nor could a reasonable fact finder conclude that Bocobo

---

[24] Dr. Joseph Zeccardi, the head if Emergency Medicine at Bridgeton
Hospital, testified (at pp. 81-84 of his deposition) that he had discussed
with Chase the possibility of not including Plaintiff in the new group to be
formed with the Vineland radiologists. Zeccardi told Chase he had a similar
experience with another employee involved with a group of which he was
Chairman which was also reforming. Zeccardi found Bocobo to be "perseverative,
argumentative and unreasonable." Nothing in the record, however, suggests
that Zeccardi was acting at the request or behest of SJHS or had the authority
to make such a suggestion to Chase on behalf of SJHS.

[25] Count Eight is another instance where the Complaint is unclear as to
the party against whom Bocobo asserts the claim. The count only alleges that
Chase and SJHS made defamatory statements. However, Bocobo demands judgment
against "Defendants." Because the Court's disposition of this count is not
dependent on the identity of the defendants, the Court will assume Bocobo
asserts the claim against all defendants.

[26] The statute of limitations for defamation actions is one year from
the date of publication. N.J. Stat. Ann. § 2A:14-3.

[27] Trade libel claims have a six year statute of limitations. *Patel v.
Soriano*, 369 N.J. Super. 192, 247 (App. Div. 2004), *Crawford v. West Jersey*

21

actually suffered special damages under a trade libel theory.

For any alleged defamatory statement[28] to be actionable in this case, it must have been published on or after April 12, 2001 – one year prior to the date the Complaint was filed.  Though Bocobo does not specifically identify when the alleged defamatory statements were published, the record indicates all statements took place before Bocobo was formally notified on April 12, 2001 that he would no longer be employed by Radiology Consultants.[29] Thus, a defamation action is untimely and Defendants are entitled to summary judgment as a matter of law.

To the extent the alleged statements might form the basis of a trade libel claim, Bocobo's claim also fails because he did not plead, nor does the record support a conclusion that he suffered special damages as a result of the alleged libelous statements.

"To state a claim for trade libel under New Jersey law,

_____

*Health Sys.*, 847 F. Supp. 1232, 1239 (D.N.J. 1994).

[28] Bocobo alleges, among other things, that Dr. Chase said Bocobo had a "documented attitude problem," (Complaint at ¶ 153) and "tried to get out of doing radiology tests" (Plaintiff's Brief in Opposition to Defendants Chase, Radiology Consultants' and Alliance Radiology's Motion for Partial Summary Judgment ("Pl. Opp. Brief") at p. 59.)  Bocobo further alleges that "SJHS also presents false rumors . . . that Dr. Bocobo sexually harassed an employee, that he remarked he could sleep with anyone in the hospital but he prefers virgins, and that Dr. Bocobo made unreasonable demands on the hospital staff." (Pl. Opp. Brief at p. 59.) Because Bocobo's claim cannot proceed under either a defamation or trade libel theory the Court does not decide whether the statements could constitute either defamation or trade libel.

[29] Bocobo's assertion, "It is also evident that SJHS and Chase have continued to maintain since Dr. Bocobo's termination and they are still publishing the false allegations in the secret file, to date," (Pl. Opp. Brief at p. 58) is not supported by the record.

22

[Plaintiff] must allege (1) publication, (2) with malice, (3) of false allegations concerning their property, product or business, and (4) special damages." *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 427-28 (D.N.J. 2005). "The plaintiff must plead and prove special damages with particularity." *Mayflower Transit, L.L.C. v. Prince,* 314 F. Supp. 2d 362, 378 (D.N.J. 2004); *see also* Fed. R. Civ. P. 9(g) ("When items of special damage are claimed, they shall be specifically stated."). Bocobo must "allege either loss of particular customers by name, or a general diminution of business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Mayflower Transit,* 314 F. Supp. 2d at 378; *see also Arista Records,* 356 F. Supp. 2d at 428 (citing *Mayflower Transit*); *Patel v. Soriano*, 369 N.J. Super. 192, 248 (App. Div. 2004) ("plaintiff must prove special damages, such as the loss of present or prospective advantage, in the form of pecuniary loss").

Bocobo's Complaint lacks the specificity required when pleading special damages. Bocobo alleges that Dr. Chase's "false and defamatory" statements "caused [Plaintiff] to be avoided by his peers, and subjected him to a loss of goodwill esteem, respect and confidence entertained toward him by others" and further, as a result of the defamatory and false statements, "Dr. Bocobo has been caused to suffer, and is continuing to suffer,

substantial money damages, including but not limited to damages to his personal and business reputation, and has suffered and will continue to suffer extreme mental anguish and distress." (Complaint at ¶¶ 152, 155.)  Bocobo does not allege a general loss of patients, much less loss of specifically named patients. Nor does he allege specific diminution in business or pecuniary loss as a result of the alleged false statements.  *See Mayflower Transit,* 314 F. Supp. 2d at 378 (explaining that a showing of pecuniary loss as a result of diminution of business requires a comparison of sales amounts prior to and after the alleged false statements).

Indeed, very shortly after Bocobo learned he would not be employed by Alliance Radiology, he accepted another radiologist position at the University of Pennsylvania.  Such a fact militates against a finding of special damages in this case.[30] *Contrast Crawford v. West Jersey Health Sys.,* 847 F. Supp. 1232, 1239 (D.N.J. 1994) (holding a doctor stated a claim for trade libel where she alleged that "she was prevented from finding other suitable employment and from pursuing her usual business pursuits long after she was terminated from her employment with defendants").  Moreover, there is no evidence that Bocobo lost any patients as a result of the alleged false statements made

---

[30]  Even if the Court assumes that the somewhat lower salary Bocobo received at the University of Pennsylvania is sufficient to establish special damages, there is no evidence to support a conclusion that these damages were a direct result of the allegedly false statements.

24

about him. *Contrast Patel*, 369 N.J. Super. at 253 (holding that trial judge properly awarded damages for trade libel where evidence proved doctor lost referrals); *Enriquez v. West Jersey Health Sys.*, 342 N.J. Super. 501, 525 (App. Div. 2001) (reversing summary judgment for defendant on trade libel claim where plaintiff-doctor testified at deposition that she retained only half of her patients after the alleged false statements were made). Thus, Bocobo has failed to demonstrate any issue of material fact as to special damages resulting from the alleged trade libel. The Court will grant summary judgment for all Defendants on Count Eight.

E.

Count Ten alleges tortious interference with prospective economic advantage against Chase and SJHS for allegedly conspiring to terminate his staff privileges with SJHS. To establish intentional interference with prospective economic advantage, Bocobo must establish (1) a prospective economic relationship; (2) interference with the prospective relationship that was intentional and done with malice; (3) the interference caused the loss of prospective gain; and (4) damages. *Printing-Mart Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 750-52 (1989). Bocobo asserts that SJHS and Chase conspired to terminate him from Radiology Consultants and then exclude him

from Alliance Radiology.

The record does not support an inference that SJHS had any involvement in Radiology Consultants' decision to terminate Bocobo or in the decision to form a new radiology group without him. (*See* III. E. *supra*.) Thus, the evidence does not support a conclusion that SJHS interfered with Bocobo's prospective economic advantage, and summary judgment for SJHS will be granted.

With respect to the claim against Chase, "it is fundamental to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *Id.* at 752. "Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law." *Id.* at 753; *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir. 2001). Bocobo and Chase were both shareholders and officers of Radiology Consultants. Their relationship was governed by the Business Relationship Agreement, the Shareholder Agreement, and an Employment Agreement.[31]

---

[31] Radiology Consultants, rather than Chase himself, was party to the Employment Agreement. Even so, Chase cannot be considered a third party to the Employment Agreement. There is no allegation or evidence in the record that Chase was acting outside the scope of his employment as President of Radiology Consultants when he allegedly interfered with Bocobo's prospective economic advantage. *See Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir. 2001) ("A cause of action for tortious interference with a contract cannot be directed against a defendant who is a party to the contract. . . . this rule extends to agents of a corporation."). Additionally, Chase and Bocobo are co-employees of Radiology Consultants. Chase is not a proper defendant to a tortious interference claim for that reason as well.

Bocobo's tortious interference claim is an inappropriate vehicle to address disputes directly related to the parties' rights and responsibilities arising out of these contracts.

Bocobo argues that Chase interfered with Bocobo's staff privileges at SJHS, thereby interfering with the relationship between Bocobo and SJHS, not Radiology Consultants. This argument is unavailing. As noted earlier in this opinion, Bocobo's staff privileges at Millville and Bridgeton were totally dependent on his being an employee of Radiology Consultants or any radiology group which had an exclusive contract with SJHS. Since we have already ruled that Bocobo's termination as an employee of Radiology Consultants without cause on ninety days notice was permitted by his employment contract, Chase can hardly be charged with tortious conduct based on lawful conduct. For the foregoing reasons, summary judgment for Defendants Chase and SJHS will be granted on Count Ten.

F.

In Count Eleven Plaintiff charges all Defendants with the tort of conversion. He asserts that the transfer of the Imaging Center (the outpatient radiology facility) to Alliance Radiology

---

See *Fioriglio v. City of Atlantic City*, 996 F. Supp. 379, 392-393 (D.N.J. 1998) (Irenas, J.) (holding that co-employees acting within the scope of their employment cannot be liable for tortious interference with plaintiff's contract with their common employer).

amounted to a wrongful appropriation of the assets of Radiology Consultants which diluted the value of his interest in that company.[32] Since the Court has already denied summary judgment to the RC Defendants on Bocobo's claim as a shareholder, the value of all the assets of Radiology Consultants, including the Imaging Center,[33] might figure into any damage calculation made on this claim. Therefore, in this sense the conversion claim is really redundant. Also as noted earlier, there is nothing but speculation in this record to support the theory that Bocobo's termination as a member of Radiology Consultants or his exclusion from Alliance Radiology was counseled, procured, or aided and abetted by SJHS. Summary judgment in favor of all Defendants is appropriate on this Count.

G.

Count Twelve alleges breach of the Deferred Compensation Agreement between Bocobo and Radiology Consultants. Only SJHS moves for summary judgment on this count.[34]

---

[32] Defendants argue that this Count could only be brought as a derivative action because the alleged harm fell equally on all four shareholders. This argument is flawed because three of the shareholders became shareholders of Alliance Radiology which succeeded to the assets of the Imaging Center and, thus, did not share in the type of loss claimed by Bocobo.

[33] As noted earlier, the assets of the Imaging Center were subject to a substantial debt owed to SJHS.

[34] In his ad damnum clause Bocobo seeks relief against all Defendants, although the basis of the claim against SJHS is unclear. In his opposition papers, Bocobo completely ignores SJHS's motion on this count.

"[O]ne who is not a party to a contract cannot sue in respect to a breach of duty arising out of it."  *Reilly v. Feldman*, 103 N.J.L. 517, 519 (N.J. Sup. Ct. 1927).  Conversely, one who is not a party to a contract may not be sued for a breach arising out of it.  Not only is SJHS not a party to this agreement, but there is no evidence in the record of any kind that SJHS procured, counseled or aided and abetted the alleged breach of contract by the RC Defendants.  Therefore summary judgment for SJHS is warranted on Count Twelve.

## IV.

For the reasons set forth above, the Court will grant SJHS's motions for summary judgment in their entirety.  SJHS will be dismissed from this suit, as there are no remaining claims against it.  The Court will grant summary judgment for Defendants Chase, Radiology Consultants, and Alliance Radiology on Counts 3, 8, 10 and 11, and on Counts 5, 6, and 7 to the extent that they allege the loss of rights as an employee of Radiology Consultants or as a staff member of SJHS hospitals in Bridgeton or Millville. To the extent that Counts 5, 6 or 7 allege that the RC Defendants acted in derogation of Plaintiff's rights as a shareholder of Radiology Consultants, summary judgement will be denied.  Thus, as against the RC Defendants, Counts 5, 6 and 7 partially survive summary judgment, as does Count 12, which was not included in the

RC Defendants' present summary judgment motion.   The Court will enter an appropriate order.


Date: November 21, 2005


_____
        **JOSEPH E. IRENAS**
**Senior United States District Judge**